Emily Brandenburg (AKA Emily Kearney) (CA SBN 287652)
emily@thekearneyfirm.com
The Kearney Firm, APC
301 Bayview Circle, Suite A5278
Newport Beach, CA 92660

Attorney for Plaintiff
EETHO BRANDS, INC.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

EETHO BRANDS, INC., a Delaware corporation;

Plaintiffs,

vs.

ARYAMAN CHOUDHARY, an individual; KHUSH PATEL, an individual; and DOES 1-100;

Defendants.

Case No.: '26CV5692 H MMP

COMPLAINT FOR

(1) COPYRIGHT INFRINGEMENT (DOSE WEBSITE)
(2) COPYRIGHT INFRINGEMENT (DOSE LOGO)
(3) LANHAM ACT – TRADEMARK INFRINGEMENT
(4) LANHAM ACT – TRADE DRESS INFRINGEMENT (PRODUCT PACKAGING)
(5) LANHAM ACT – TRADE DRESS INFRINGEMENT (WEBSITE)
(6) LANHAM ACT – FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION
(7) LANHAM ACT – FALSE ADVERTISING
(8) CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500)
(9) CALIFORNIA UNFAIR

COMPETITION LAW (Cal. Bus. & Prof. Code § 17200)
(10) DEMAND FOR JURY TRIAL

Plaintiff Eetho Brands, Inc., a Delaware corporation doing business as Dose ("Dose" or "Plaintiff"), brings this action against Defendants Aryaman Choudhary and Khush Patel, individually and in their capacities as owners, operators, and/or controlling persons of the brand formerly marketed as "Root" and currently marketed as "Jeeva," whether operating through a corporate entity, limited liability company, partnership, or other business form, the true names and capacities of which are presently unknown, and against Does 1–100, inclusive (collectively, "Defendants"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 et seq., and for trade dress infringement, false designation of origin, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), as well as related state-law unfair competition claims.

2. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the laws of the United States, including the Copyright Act and the Lanham Act.

3. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. This Court has personal jurisdiction over Defendants Aryaman Choudhary and Khush Patel because, upon information and belief, Defendants are residents of the State of California and reside in San Diego County, California. Defendants have therefore purposefully availed themselves of the privileges of conducting activities within this District and are subject to personal jurisdiction here.

5. This Court also has personal jurisdiction over Defendants because Defendants committed the infringing and unlawful acts alleged herein from within this District and directed those acts toward consumers nationwide through an interactive, commercial website operated from or controlled within this District.

6. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

7. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Defendants' development, operation, and control of the infringing website and marketing materials.

## THE PARTIES

8. Plaintiff Eetho Brands, Inc. is a Delaware corporation that owns and operates the dietary supplement brand known as Dose. Dose sells liquid dietary supplement "health shot" products through its website, including https://dosedaily.co/and related product pages (the "Dose Website"), as well as through social media and digital marketing channels.

9. Dose has developed a distinctive brand identity, bottle presentation, and custom-built website intended to communicate scientific credibility, functional efficacy, and brand trust.

10. Upon information and belief, Defendants Aryaman Choudhary and Khush Patel are the founders, owners, and controlling persons behind the dietary supplement brand formerly marketed as "Root's Natural Heart Support" ("Root") and currently marketed as "Jeeva's Natural Heart Support" ("Jeeva"). Choudhary and Patel have each held themselves out publicly as co-founders of Root.

11. Defendants marketed and sold dietary supplement products through the website https://drinkrootforheart.com (the "Root Website"), and now market and sell the same or substantially the same products through the website https://jeevalife.co (the "Jeeva Website"). The Root Website and the Jeeva Website are referred to collectively herein as the "Infringing Websites."

12. Upon information and belief, the Root Website and the Jeeva Website are and have at all relevant times been the same underlying e-commerce storefront, operated by Defendants through a single Shopify merchant account bearing the store handle "root-for-your-heart.myshopify.com" and the merchant identifier 67054829647, as further alleged below.

13. Upon information and belief, Defendants personally directed, controlled, participated in, ratified, and are the moving force behind the infringing and unlawful conduct alleged herein, whether acting directly or through agents, contractors, or undisclosed business entities.

14. Plaintiff is unaware of the true names and capacities of Defendants sued herein as Does 1–100, including any company name under which Defendants operate and sell their products at issue, and will amend this Complaint to allege their true names and capacities when ascertained.

## FACTS UNDERLYING CAUSES OF ACTION

### Dose Ownership and Rights in its Protectable Website

15. Dose has invested substantial time, expense, and creative effort into developing a distinctive, custom-built website and product presentation reflecting a carefully designed consumer education and conversion flow.

16. The Dose Website is not based on a shared Shopify, WordPress, or other off-the-shelf template. Instead, it embodies an original and intentional "persuasion

architecture” consisting of the unique selection, coordination, and arrangement of content, visuals, conversion elements, and sequencing.

17. A screenshot of the Dose Website appears below:




18. Plaintiff owns a valid and enforceable copyright registration covering original copyrightable material contained in the Dose Website, including original text, artwork, and other original expressive content. See Exhibit A, Registration No. TX0009550212 (the “Dose Website Copyright”).

19. Plaintiff’s Dose Website Copyright includes original text, artwork, and other original expressive content, as well as the protectable selection, coordination, arrangement, and sequencing of such content and imagery. This original selection and arrangement—including what Plaintiff refers to herein as its “persuasion architecture”—reflects creative choices concerning the sequence and presentation of expressive content used to guide consumers through a particular informational flow

emphasizing scientific legitimacy, clinical efficacy, and consumer trust. Plaintiff does not claim copyright protection in abstract marketing concepts, ideas, functional elements, or layout or format standing alone.

20. The Dose Website features a clean, minimalist layout with a fixed navigation bar with an olive background and darker olive-green colored font in a simple, modern typeface. Immediately beneath the navigation bar, product offerings are displayed in a uniform, centered grid format with high-resolution product photography with the title "Shop Our Formulas." Below this section, the Dose Website integrates segmented informational blocks ("Backed by Clinical Research," "Proven Ingredients," "What Our Customers are Saying") with large photographic elements and text blocks arranged in alternating left-right and grid alignments, giving a recognizable rhythm and structured flow distinctive to the site. The combination of these visual elements on the Dose Website, including layout, type treatments, spacing, color contrasts, image style, image placement, and navigation structure, is not dictated by functional considerations such as ease of use or technical necessity.

21. Additionally, the Dose Website features above-the-fold authority framing emphasizing science-driven and clinically backed claims; immediate discount anchoring through prominent "Save X% Today" calls to action placed directly beneath the primary claim using high-contrast orange CTA buttons; early

ingredient legitimization explaining why the target organ matters before lifestyle or testimonial content; radial or modular benefit layouts placing outcome-based claims around a centered product image; oversized quantified clinical proof sections tied to study language and participants; ingredient mechanism explanations presented through tiled modules with macro ingredient imagery and expandable features; lifestyle imagery showing liquid shots being poured into glassware on clean, neutral surfaces; layered social proof including star ratings, customer imagery, and testimonial photography depicting individuals holding the product; and illustrated problem-cause diagrams using a soft, medical illustration style that visually positions the product as the solution.

22. Additionally, the Dose Website also features three bottles grouped and staggered in the same arrangement against a neutral beige background; identical bundle offerings of three or six bottles paired with a free branded shot glass; placement of the shot glass front and center beneath the bottle trio with arrow callouts highlighting the offer; muted earth-tone color palettes with cream and beige background fields; restrained serif typography to convey authority; a single accent color reserved for calls to action and bottle caps; flat, organic botanical ingredient illustrations stacked vertically; oversized percentage typography and rounded statistic boxes presented above the fold.

///

**Dose Ownership Rights in its Logo and Product Packaging**

23. Plaintiff owns a valid US copyright registration for its Dose logo, which is displayed at right and can also be seen on the Dose for Your Liver bottles, displayed on the website screenshot, supra. See Exhibit B, Registration No. VA0002395593 (the "Dose Logo Copyright").

24. Plaintiff is the owner of the common law Dose trademark logo (the "Dose Logo"), displayed above in paragraph 23 of this Complaint.

25. The Dose Logo is the subject of a pending trademark application, Serial No. 99655709, which was filed February 16, 2026.

26. The Dose Logo is a valid and protectible trademark, widely recognized across the United States as pointing unmistakably to Plaintiff and Plaintiff's products.

27. Plaintiff has been exclusively using the Dose Logo in connection with its business and the sale of its Dose branded products since 2020.

28. EETHO owns all rights, title, and interest in the Dose Logo Copyright and the Dose Logo.

[This section is intentionally left blank]

29. Plaintiff also owns protectable trade dress in the overall look and feel of its Dose product bottle packaging (examples at right), including its unique shape, design and coloration, which is distinctive, non-functional, and serves to identify Dose as the source of its products (the "Dose Product Packaging").







30. Specifically, the Dose Product Packaging features a four-sided bottle with gently rounded shoulders and a color-saturated cap in a flat matte color. The body of the bottle features a cream background with the simple, four-letter, one-syllable "Dose" appearing in a grey-blue modern, clean, font in the top third of the packaging. Smaller text in the same font and color announces the sub-brand below the word "Dose." At the center of the packaging is a flat, illustrative graphic composed of modern organic shapes and fruit elements in muted, earthy tones of orange, soft yellow, olive green, and charcoal. Additional information is placed near the bottom third of the packaging in the blue-grey font. The Dose for Your Liver bottle contains a matching soft yellow cap that matches the Dose Logo coloration, the Dose for Cholesterol a soft red top that matches the corresponding similar logo coloration.

31. Plaintiff has used the current Dose Product Packaging for its Dose products since at least as early as 2022.

32. The Dose Product Packaging is subject of pending trademark applications, Serial Nos. 99655712 and 99655715, which were filed February 16, 2026.

Defendants' Copying and Unlawful Conduct: ROOT and JEEVA

33. The allegations below describe Defendants' initial product and website as marketed under the "Root" name through January 2026, Plaintiff's January 2026 cease-and-desist demand, Defendants' removal of the Root Website following that demand, and Defendants' subsequent republication of substantially the same product and website under the new name "Jeeva."

34. As detailed below, Defendants' Root Website and product packaging closely replicated the overall look, feel, structure, sequencing, and presentation of the Dose Website and Dose Product Packaging. The similarities were sufficiently extensive and specific to support the inference that Defendants used Dose's materials as a reference or template in developing their competing product and website.

35. After Plaintiff specifically identified this conduct and demanded that Defendants cease the infringement, Defendants took the Root Website offline. Months later, however, Defendants relaunched substantially the same website and product presentation under the name "Jeeva," where the challenged content remains available as of the filing of this Complaint.

36. Defendants marketed competing dietary supplement products through the Root Website, and now market those same products through the Jeeva Website.

**Defendants' Initial ROOT Product and Website**

37. Plaintiff and Defendants both sell, market, and advertise liquid dietary supplement health shots. Defendants' former Root product, as displayed on the Root Website, is shown at right, alongside Plaintiff's Dose product at left. The overall packaging of Defendants' Root product closely resembles the Dose Product Packaging, particularly Plaintiff's Dose for Cholesterol product. Among other similarities, both use a similarly shaped bottle with rounded shoulders; a saturated, matte-colored cap; a cream-colored body; a short, single-word brand name positioned in the upper third of the label; smaller descriptive text immediately beneath the brand name; a centered botanical illustration composed of fruit and organic shapes in muted, earthy colors; and similarly positioned secondary product information in the lower portion of the label. The combination and arrangement of these elements creates a highly similar overall commercial impression.




38. Defendants' Root Website likewise adopted and replicated the overall look, feel, structure, sequencing, and persuasive architecture of the Dose Website in a manner that was confusingly similar and likely to cause consumer confusion as to source, sponsorship, affiliation, or approval with Dose.

39. Defendants' copying was not limited to isolated elements. Rather, Defendants have appropriated Dose's distinctive selection, coordination, and arrangement of content, visuals, and conversion sequencing, resulting in a substantially similar overall commercial impression.

40. By way of example, Defendants' Root Website mirrored Dose's expressive presentation through a nearly identical persuasion sequence, including:

- Above-the-fold authority framing emphasizing science-driven and clinically backed claims;
- Immediate discount anchoring using prominent "Save X% Today" calls-to-action placed directly beneath primary claims with high-contrast orange CTA buttons;
- Early ingredient legitimization explaining why the target organ matters before lifestyle or testimonial content;
- Modular or radial benefit layouts placing outcome-based claims around a centered product image;
- Oversized quantified "clinical proof" sections referencing percentages, participants, weeks, or study language;
- Ingredient mechanism explanations presented through tiled modules with macro ingredient imagery and expandable features;

- Lifestyle imagery depicting liquid shots being poured into glassware on neutral surfaces;
- Layered social proof including star ratings, customer imagery, and testimonial photography depicting individuals holding the product; and
- Illustrated problem-cause diagrams in a soft medical illustration style positioning the product as the solution.

41. Non-exclusive examples of the similarities between the Dose Website and the Root Website are displayed below:

<u>EXAMPLE 1</u>






EXAMPLE 2







[This section is intentionally left blank]

EXAMPLE 3

DOSE and ROOT website screenshots (top); DOSE Amazon screenshot (bottom)









<u>EXAMPLE 4</u>




[This section is intentionally left blank]




42. Among these similarities, the shot-glass bundle presentation shown in Example 3 is not functionally required and, upon information and belief, is not standard within the industry. Defendants nevertheless adopted a substantially similar bundle configuration and visual presentation, including the placement of the branded shot glass with the grouped bottles.

43. As seen above and elsewhere on Defendants' Root Website, Defendants' Root Website further employed a highly similar visual language reinforcing the copying, including:

- Three bottles grouped and staggered in the same arrangement against a neutral beige background;
- Identical bundle offerings of three or six bottles paired with a free branded shot glass;
- Placement of the shot glass front and center beneath the bottle trio with arrow callouts highlighting the offer;
- Muted earth-tone color palettes with cream and beige background fields;
- Restrained serif typography;
- A single accent color reserved for calls-to-action and bottle caps;
- Flat, organic botanical ingredient illustrations stacked vertically; and
- The same order of information presented in the same sequence across the page.

44. Defendants also copied or closely paraphrased portions of Dose's website text and content structure, including at least one instance of identical text and arrangement, as seen in the corresponding images below from the Dose Website and the Root Website:







45. Upon information and belief, the Root Website was registered and first published on or about September 28, 2025, with records reflecting updates to the website on the same date.

46. Defendants compete directly with Plaintiff by selling substantially similar liquid dietary supplement health shots to the same class of consumers. Defendants market those competing products using both product packaging and website presentation that closely resemble Plaintiff's Dose Product Packaging and Dose Website.

47. Upon information and belief, Defendants asked at least one potential manufacturer to make Defendant's product packaging similar to that of Dose.

48. The marketing channels and target consumers of Plaintiff and Defendant's products overlap and heightens the likelihood of consumer confusion.

**Plaintiff's Demand Letter and Defendants' Response**

49. On January 7, 2026, Plaintiff, through counsel, sent Defendants a written cease and desist letter addressed to Defendants at their San Diego address and to Choudhary's email address, aryamanc2003@gmail.com, identifying in detail the infringing conduct alleged herein and demanding that Defendants cease it. A true and correct copy of that letter, which included additional examples of Defendants' infringing conduct, is attached as Exhibit C.

50. The cease and desist letter was transmitted by both email and FedEx. Defendants received it on January 10, 2026. The letter demanded written confirmation of compliance no later than January 18, 2026.

51. On January 13, 2026, at approximately 3:00 p.m., Choudhary telephoned Plaintiff's counsel. During that call, Choudhary did not dispute the similarities between the two websites. He stated that any infringement was not intentional and that Defendants were preparing a settlement proposal.

52. During the same call, Choudhary asked Plaintiff's counsel whether Plaintiff was also asserting trade dress infringement as to the Root bottles. Plaintiff's counsel confirmed that it was. Defendants were therefore on actual notice, no later than January 13, 2026, that Plaintiff asserted rights in both the Dose Website and the Dose Product Packaging.

53. Plaintiff's counsel instructed Choudhary to retain counsel and to submit a settlement proposal before the January 18, 2026, deadline, failing which Plaintiff would file suit.

54. On Saturday, January 17, 2026, Choudhary left a voicemail message for Plaintiff's counsel stating that Defendants had taken down the Root Website. On or about this time, Plaintiff's counsel visited the Root Website address and saw that the Root Website was taken offline.

55. Plaintiff's counsel responded by email and requested the settlement proposal Choudhary had promised. Choudhary replied that Defendants were "working on it."

56. No settlement proposal was ever sent. Defendants never provided the written confirmation of compliance that the letter demanded.

57. Defendants subsequently retained counsel. By letter dated January 31, 2026, Defendants' counsel confirmed that Defendants had taken down the Root Website while addressing Plaintiff's allegations, without admitting liability, disputed Plaintiff's claims concerning the scope of its asserted rights and available remedies, and requested additional information regarding Plaintiff's allegations and claimed damages. Plaintiff's counsel received this letter via email on February 2, 2026.

58. On February 7, 2026, at 4:26 p.m., Choudhary sent an email from aryamanc2003@gmail.com to Vasu Goyal, Plaintiff's founder and Chief Executive Officer, at vasu@dosedaily.co, under the subject line "Question." The body of the email read, in its entirety: "Why ru such a bitch bro." A true and correct copy is attached as Exhibit D.

59. By January 31, 2026, Defendants had actual notice of Plaintiff's asserted copyright and trade dress rights and had taken the Root Website offline while addressing Plaintiff's allegations. As alleged below, approximately six months later, Defendants republished substantially the same website and product presentation under the Jeeva name.

///

///

**Defendants' Relaunch of the Infringing Website as "Jeeva"**

60. Upon information and belief, on or about August 6, 2026, Defendants republished the infringing Root Website storefront (previously located at https://drinkrootforheart.com) on https://jeevalife.co under the brand name "Jeeva's Natural Heart Support."

61. The Jeeva Website is operated through the same underlying Shopify merchant account and e-commerce infrastructure previously used by Defendants for the Root Website, including the same Shopify store handle and merchant identifier, as further alleged below.

62. The HTML title of the Jeeva Website home page is, as of the drafting of this Complaint, still "Root for Your Heart."

63. The Shopify store handle embedded in the Jeeva Website's own customer authentication tokens, as of the drafting of this Complaint, is still "root-for-your-heart.myshopify.com."

64. The Shopify merchant identifier associated with the Jeeva Website is 67054829647, which is the same merchant identifier that appears in the transactional order confirmation emails Defendants send to customers, as described below.

65. The logo image displayed on the Jeeva Website home page is served from Defendants' content delivery network under the file name "ROOT.svg."

66. Multiple call-to-action buttons on the Jeeva Website, including the "SAVE 25% TODAY" and "SHOP NOW" buttons, still link directly to product pages hosted on the Root Website at drinkrootforheart.com.

67. Starting on August 6, 2026, the body copy of the Jeeva Website still referred to the product as "Root" throughout, including in the headings "Why Root?", "What does Root taste like?", "Is Root just beet juice?", "How do I use Root?", "How is Root sweetened?", and "What's Inside Root?", and in the statement "At Root, we worked with Cardiologists and Ayurvedic experts."

68. The bottle that Defendants sell under the Jeeva name is the same bottle they sold under the Root name, with the brand name changed. It retains the four-sided bottle with gently rounded shoulders, the color-saturated flat matte cap (this time even more similar to the Dose equivalent, extending below the neck and blending into the cream body), the cream body, the placement of the one-word brand name in the same position and typeface in the top third of the label, the smaller sub-brand line immediately beneath it, the centered flat botanical illustration in muted earth tones, and the same placement of secondary product information near the bottom third, all as alleged above with respect to Defendants' Root bottle and Plaintiff's Dose Product Packaging. Both the flat matte cap and the coloration of the bottle, were now even more similar to those of Dose. Some time thereafter, Defendants made other insubstantial changes to the Jeeva wording and graphics to

create a second iteration of the bottle, while still retaining each of these infringing elements.

69. The Dose bottle, Defendants' Root bottle, and Defendants' first and second Jeeva bottles are displayed below, left to right:




70. The Jeeva Website incorporates substantially the same infringing elements that Defendants previously published on the Root Website and that Plaintiff identified in its cease and desist letter. Among other things, the Jeeva Website presents the same or substantially similar product photography, three-bottle staggered arrangement with the free branded shot glass, claim structure, and page sequencing. Defendants' substitution of the "Jeeva" brand name for "Root" did not eliminate the infringing elements previously identified by Plaintiff.

71. A representative page from the Jeeva Website is displayed below, followed by its equivalent from the Dose Website:







72. Defendants' incorporation into the newly published Jeeva Website and product presentation of numerous elements previously challenged by Plaintiff demonstrates that Defendants' removal of the Root Website did not result in abandonment of the conduct identified in Plaintiff's cease and desist letter.

73. The Jeeva Website retains the infringing elements identified in Plaintiff's cease and desist letter, including:

- Above-the-fold authority framing emphasizing science-driven and clinically backed claims;

- Immediate discount anchoring through a prominent "SAVE 25% TODAY" call-to-action placed directly beneath the primary claim;
- Three bottles grouped and staggered in the same arrangement against a neutral beige background;
- Three-bottle and six-bottle bundle offerings paired with a free branded shot glass;
- Oversized quantified clinical-proof percentages tied to study language and participant counts;
- Ingredient mechanism explanations presented through tiled, expandable modules with macro ingredient imagery;
- Layered social proof including star ratings, review counts, and testimonial content; and
- The same muted earth-tone palette and the same order and sequence of information across the page.

74. The three-bottle bundle presentation with the free branded shot glass, which Plaintiff identified in its cease and desist letter as a non-functional element copied from the Dose Website, remains on the Jeeva Website in the same arrangement, against the same neutral beige field, with the shot glass placed front and center beneath the bottle trio and an arrow callout highlighting the offer, as displayed below:







<u>**Comparison bundle presentation**</u>

75. The Jeeva Website likewise continues to present its ingredients through the same illustrated, modular format, using flat botanical imagery and outcome-based benefit statements arranged around the product, as displayed below:






**Comparison Ingredient Presentation**

76. True and correct screenshots of the Jeeva Website are attached as Exhibit E.

77. After removing the Root Website from public availability for approximately six months, Defendants rebranded their product as Jeeva and affirmatively published the Jeeva Website, which again incorporated substantially the same infringing elements of the Dose Website and Dose Product Packaging previously identified by Plaintiff.

78. Defendants' August 2026 republication occurred after Defendants had actual notice of Plaintiff's asserted copyright and trade dress rights and after the Root Website had been removed from public availability for approximately six months. Together with Defendants' pre-launch communications concerning packaging similar to Dose's, these facts support Plaintiff's allegation that Defendants' infringement was knowing and willful.

79. Defendants' August 2026 publication of the Jeeva Website constituted a new post-registration act of infringement. Defendants had taken the Root Website offline approximately six months earlier and ceased making the infringing website publicly available. After that period of cessation, Defendants affirmatively published the Jeeva Website under a new brand name, again incorporating the same protected elements of the Dose Website, despite having actual notice of Plaintiff's copyright and asserted rights.

**Defendants' Continued Use of Data Collected Through the Root Website**

80. Prior to the takedown of the Root Website, Plaintiff's counsel visited that site in the course of investigating Defendants' conduct, provided an email address in order to receive Defendants' marketing communications, and entered payment card information. She did not enroll in any recurring order and did not authorize Defendants to charge her payment card.

81. On August 8, 2026, more than six months after Defendants represented that the Root Website had been taken down, Defendants charged that payment card $74.99 and sent an order confirmation for order #1052 for "Jeeva's Natural Heart Support," consisting of three glass bottles and two free gifts. No such order had been placed and the charge was not authorized.

82. The order confirmation was sent from the Shopify address store+67054829647@t.shopifyemail.com and designated Choudhary's email address, aryamanc2003@gmail.com, as both the reply-to address and the customer service contact for Jeeva. A true and correct copy is attached as Exhibit F.

83. That transaction confirms that Defendants continue to operate the same storefront under a new name, that Defendants carried customer and payment data collected through the infringing Root Website over to the Jeeva Website, and that Defendants continue to transact with consumers acquired through the infringing Root Website.

**Defendants' False and Misleading Advertising**

84. In addition to copying Plaintiff's protected work, Defendants make specific, quantified representations of fact on the Jeeva Website that, upon information and belief, are false.

85. The Jeeva Website displays, under the heading "Coming In December To…," the logos of four retailers, namely, Whole Foods Market, CVS Pharmacy, Sprouts Farmers Market, and Amazon, conveying to consumers that Defendants' product will shortly be available at those retailers. Upon information and belief, Defendants have no agreement, commitment, or relationship with any of those retailers, and the representation is false.

86. The Jeeva Website represents that Defendants' product has "4.7 stars from 5673+ reviews" and displays a summary reading "5673 Reviews | Average Rating 4.7/5." Upon information and belief, those reviews do not exist and the rating and review count are fabricated.

87. The Jeeva Website represents that consumers should "Join 17,000+ daily users transforming their heart health" and elsewhere claims "17,000+" members. Upon information and belief, Defendants do not have 17,000 or more customers or users, and the representation is false.

88. The Jeeva Website represents that Defendants tested the product "in 2025 through a gold standard clinical study: randomized, double blind, and placebo-

controlled, with 120 participants," and reports specific results from that purported study, including that "89.5%" of 120 participants showed improved energy, blood pressure and circulation in eight weeks, a 16% increase in nitric-oxide bioavailability, a 19% gain in vitality and cognitive focus measured by SF-36 score, a 12% improvement in peripheral circulation measured by thermographic index, and a 15% decrease in salivary cortisol. Upon information and belief, no such clinical study was conducted and the reported results are fabricated.

89. The Jeeva Website displays purported customer testimonials attributed to named individuals in identified cities, including claims of specific blood pressure reductions. Upon information and belief, these testimonials are fabricated and do not reflect the experiences of actual customers.

90. Defendants' representations concerning clinical validation, retail distribution, customer volume, and consumer satisfaction are material. They go to the central purchasing considerations for a dietary supplement and are likely to influence the purchasing decisions of consumers.

91. Defendants made these representations in commercial advertising and promotion, in interstate commerce, through a website that solicits and accepts orders from consumers nationwide.

92. Because Plaintiff and Defendants sell competing health shots to the same consumers through the same channels, Defendants' false claims of clinical

validation, imminent retail distribution, and mass consumer adoption divert sales from Plaintiff and injure Plaintiff's reputation and goodwill.

**Harm to Plaintiff**

93. Plaintiff has not authorized Defendants to copy, adapt, emulate, or derive from the Dose Website, the Dose Logo, the Dose Product Packaging, or any of Plaintiff's copyrighted works, whether under the Root name, the Jeeva name, or any other name.

94. Defendants failed to respond adequately to Plaintiff's demand, failed to cure the infringing conduct, and instead continued and expanded it, demonstrating willful disregard for Plaintiff's intellectual property rights.

95. Defendants' conduct has caused and continues to cause Plaintiff substantial harm, including lost sales, dilution of goodwill, damage to brand reputation, and erosion of Plaintiff's distinct market identity.

96. Defendants' pattern of taking the infringing website offline and republishing it under a new name demonstrates that Plaintiff has no adequate remedy at law and that injunctive relief is necessary to prevent Defendants from simply rebranding again.

///

///

///

**COUNT 1**

**Copyright Infringement of the Dose Website Copyright**

**(Direct, Contributory, and Vicarious)**

97. Plaintiff incorporates and re-alleges each paragraph above into this claim.

98. Plaintiff owns valid and enforceable copyrights in the Dose Website Copyright.

99. True and correct copies of the copyright registration certificate for the Dose Website Copyright is attached hereto as Exhibit A which was previously incorporated by reference.

100. Defendants offer and have offered their “Root” and “Jeeva” branded health shots for sale to consumers throughout the United States and within this judicial district via the Root (now Jeeva) Website. Defendants own and control, and are the moving force behind, all the infringing and other wrongful conduct set forth herein.

101. Defendants, via its Root Website, copied, reproduced, displayed, and created derivative works based on Plaintiff’s Dose Website Copyright without authorization, including copying Plaintiff’s original selection, coordination, and arrangement of Dose Website content and imagery.

102. After taking the Root Website offline and ceasing its public availability for approximately six months, Defendants affirmatively published the Jeeva Website

in August 2026. The Jeeva Website again incorporates the same protected elements of the Dose Website and remains publicly available as of the filing of this Complaint. Plaintiff alleges that the August 2026 publication constituted a new post-registration act of infringement. As illustrated by the website comparisons alleged above and included in Plaintiff's cease and desist letter attached as Exhibit C, Defendants copied protected expressive elements of the Dose Website, including original text and the selection, coordination, and arrangement of expressive content. At least one portion of Defendants' website reproduced a substantial passage of Plaintiff's website text and its arrangement verbatim.

103. Defendants' infringement was willful, intentional, and undertaken with knowledge of Plaintiff's rights. Defendants had actual or constructive knowledge of Plaintiff's Dose Website Copyright but chose to exploit the protected work without authorization.

104. Defendants' unauthorized use of Plaintiff's copyrighted works has caused significant harm to Plaintiff, including lost sales, economic losses, dilution of goodwill, and damage to brand reputation.

105. Upon information and belief, Defendants have obtained direct and indirect profits attributable to their infringement of Plaintiff's copyrighted works, which Plaintiff is entitled to recover.

106. Plaintiff seeks, at its election and to the extent authorized by law, statutory damages under 17 U.S.C. § 504(c), including enhanced statutory damages of up to $150,000 per infringed work for willful infringement, or actual damages and Defendants' profits, together with injunctive relief, attorneys' fees, and costs as authorized by law.

**COUNT 2**

**Copyright Infringement of the Dose Logo Copyright**

**(Direct, Contributory, and Vicarious)**

107. Plaintiff incorporates and re-alleges each paragraph above into this claim.

108. Plaintiff owns valid and enforceable copyrights in the Dose Logo Copyright.

109. A true and correct copy of the copyright registration certificate for the Dose Logo Copyright are attached hereto as Exhibit B which were previously incorporated by reference.

110. Defendants offer and offered its "Root" and "Jeeva" branded health shots for sale to consumers throughout the United States and within this judicial district via the Root and later Jeeva Website. Defendants own and control, and are the moving force behind, all the infringing and other wrongful conduct set forth herein.

111. Defendants reproduced and displayed on their Root and Jeeva product packaging a botanical graphic that copies protected expressive elements of Plaintiff's Dose Logo Copyright, without Plaintiff's authorization or consent.

112. Representative screenshots depicting Defendants' copying of protected expressive elements of Plaintiff's Dose Logo Copyright are attached as Exhibit C and incorporated herein by reference.

113. Defendants' infringement was willful and intentional. Defendants copied protected expressive elements of Plaintiff's Dose Logo Copyright in connection with the development, marketing, and sale of their competing products and continued such conduct after receiving actual notice of Plaintiff's asserted copyright rights.

114. Defendants' copying was not coincidental. Before launching their competing product, Defendants instructed or requested that at least one potential manufacturer create packaging similar to Dose's packaging, including by representing that Defendants' product would be a very similar package to dosedaily.co.

115. Defendants' unauthorized use of Plaintiff's copyrighted works has caused significant harm to Plaintiff, including lost sales, economic losses, dilution of goodwill. and damage to brand reputation.

116. Upon information and belief, Defendants have obtained direct and indirect profits attributable to their infringement of Plaintiff's copyrighted works, which Plaintiff is entitled to recover.

117. Plaintiff seeks, at its election and to the extent authorized by law, statutory damages under 17 U.S.C. § 504(c), including enhanced statutory damages of up to $150,000 per infringed work for willful infringement, or actual damages and

Defendants' profits, together with injunctive relief, attorneys' fees, and costs as authorized by law.

**COUNT 3**

**Lanham Act – Trademark Infringement of the Dose Logo**

**(15 U.S.C. § 1125(a))**

118. Plaintiff incorporates and re-alleges each paragraph above into this claim.

119. Plaintiff is the owner of the Dose Logo.

120. Plaintiff has continuously and exclusively used the Dose Logo in commerce throughout the United States since at least 2020.

121. As a result of the foregoing, Plaintiff has established that its Dose Logo is a strong and valid trademark.

122. Defendants use a confusingly similar logo to the Dose Logo to sell and advertise their products, as seen in the middle of each respective bottle below:

123.




Defendant's products travel in the same trade channels and are marketed to the

same type of consumers as Plaintiff's products.

124. Plaintiff has been using its Dose Logo in commerce well before Defendants began selling their products under Defendants' confusingly similar logo.

125. Defendants' unauthorized use in commerce of their confusingly similar logo, as alleged herein, is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' products, and is likely to cause consumers to believe, contrary to fact, that Defendants' beverages are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

126. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

127. Plaintiff has no adequate remedy at law.

128. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under 15 U.S.C. §§ 1116, 1117.

///

///

///

///

**COUNT 4**

**Lanham Act – Trade Dress Infringement of the Dose Product Packaging**

**(15 U.S.C. § 1125(a))**

129. Plaintiff incorporates and re-alleges each paragraph above into this claim.

130. Plaintiff owns protectable, distinctive, and non-functional trade dress in the design and coloration of its Dose Product Packaging.

131. Through Plaintiff's continuous and exclusive use of the Dose Product Packaging since at least 2022, substantial nationwide sales of products bearing that packaging, and substantial investment in advertising and promotion prominently featuring the Dose Product Packaging, the packaging has acquired distinctiveness and secondary meaning among consumers. Plaintiff's products have generated millions of dollars in sales, and Plaintiff has invested millions of dollars in advertising and promoting the Dose brand and products, including advertising prominently displaying the Dose Product Packaging. As a result of this extensive commercial use, promotion, and consumer exposure, the relevant consuming public has come to associate the distinctive combination of elements comprising the Dose Product Packaging with Plaintiff as the source of the products.

132. The overall look, feel and design of Defendants' products (its Root and Jeeva bottles) is so similar to the Plaintiff's Dose Product Packaging that it causes consumer confusion about the source, sponsorship, or approval of Defendants' goods, as seen below:




133. Specifically, Defendant's products feature a four-sided bottle with gently rounded shoulders and a color-saturated cap in a flat matte color, which has only become more similar to Plaintiff's with time as the cap is now part of the plastic packaging that can be unpeeled, extending below the neck of the bottle where it meets the now even more similar cream-colored body. The body of the bottle features a cream background with "Root" or "Jeeva" appearing in a grey-blue modern, clean, font in the top third of the packaging. Smaller text in the same font and color announce the sub-brand below the word "Root" Or "Jeeva". At the center of the packaging is a flat, illustrative graphic composed of modern organic shapes and fruit elements in muted, earthy tones of red, soft yellow, olive green, and a blue green. Additional information is placed near the bottom third of the packaging in the blue-grey font. This is nearly identical to the protectible style, shape, color scheme, font, and overall commercial impression of Plaintiff's Product Packaging.

134. Defendants originally used the "Root" name but transferred the same infringing bottle design to their Jeeva product, changing only the brand name printed on the label along with other insubstantial changes. The Jeeva bottle infringes Plaintiff's Dose Product Packaging trade dress for the same reasons and to the same extent as the Root bottle.

135. Defendant's willfully copied Plaintiff's Product Packaging, going as far to reach out to a manufacturer and specifying their product is going to "be a very similar package to dosedaily.co."

136. Defendants were not authorized to use Plaintiff's Dose Product Packaging and did so without consent from Plaintiff.

137. Defendants' use of confusingly similar trade dress is likely to cause consumer confusion as to source, sponsorship, approval or affiliation of Defendants' goods.

138. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

139. Plaintiff has no adequate remedy at law.

140. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under 15 U.S.C. §§ 1116, 1117.

**COUNT 5**

**Lanham Act – Trade Dress Infringement of the Dose Website**

**(15 U.S.C. § 1125(a))**

141. Plaintiff incorporates and re-alleges each paragraph above into this claim.

142. Plaintiff owns protectable, distinctive, and non-functional trade dress in the overall look and feel, and particular combination and sequence, of the Dose Website.

143. Through Plaintiff's extensive use and promotion of the Dose Website, substantial nationwide sales generated through the Dose Website, and substantial investment in advertising and promotion directing consumers to the Dose Website, the distinctive combination of elements comprising the Dose Website trade dress has acquired distinctiveness and secondary meaning among the relevant consuming public. As a result of this extensive commercial use, promotion, and consumer exposure, consumers have come to associate the distinctive overall combination and presentation of the Dose Website with Plaintiff as the source of the products offered thereon.

144. The overall look, feel and design of Defendants' Root Website, and of the Jeeva Website that replaced it, is so similar to the Plaintiff's that it causes consumer confusion about the source, sponsorship, or approval of Defendants' goods.

145. Defendants were not authorized to use Plaintiff's trade dress as set forth in Plaintiff's Dose Website, and did so without consent from Plaintiff.

146. Defendants' use of confusingly similar trade dress is likely to cause consumer confusion as to source, sponsorship, approval or affiliation of Defendants' goods.

147. Defendants' conduct has caused and will continue to cause irreparable harm to Plaintiff and to consumers.

**COUNT 6**

**Lanham Act – False Designation of Origin / Unfair Competition**

**(15 U.S.C. § 1125(a)(1)(A))**

148. Plaintiff incorporates and re-alleges each paragraph above into this claim as though fully set forth herein.

149. Defendants have used a false, misleading and/or confusingly similar trade dress and advertising materials, including product bottle and website, that creates a false impression of origin or endorsement, misleading consumers into believing its goods come from or are endorsed by Plaintiff, and violating unfair competition laws (15 U.S.C. § 1125(a)) and causing potential confusion or damage.

150. Defendants' conduct falsely suggests an affiliation, connection, or association with Plaintiff and constitutes unfair competition.

151. Defendants' acts, including Defendants' use of Plaintiff's trade dress and

copyrights on its product bottles and in its internet advertising practices, have severely injured Plaintiff in its business and property. The injury to Plaintiff is, and continues to be, immediate and irreparable. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and it lacks an adequate remedy at law.

152. Defendants' acts of false designation of origin and unfair competition have been, and continue to be deliberate, willful, and wanton, with the intent to cause confusion, mistake, and deception on the part of the public, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

153. Monetary damages will not afford full and adequate relief for all of Plaintiff's injuries resulting from Defendants' conduct and, therefore, Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

154. Defendants, through their actions, have been unjustly enriched and have damaged Plaintiff's business, reputation, and goodwill.

155. If not enjoined, Defendants' conduct will continue to harm Plaintiff.

///

///

///

///

///

**COUNT 7**

**Lanham Act – False Advertising**

**(15 U.S.C. § 1125(a)(1)(B))**

156. Plaintiff incorporates and re-alleges each paragraph above into this claim as though fully set forth herein.

157. Defendants have used in commerce words, terms, names, symbols, or combinations thereof, or false or misleading description of fact, or false or misleading representations of fact, in commercial advertising or promotion that misrepresents the nature, characteristics, qualities, or geographic origin of Defendant's goods or services in violation of Section 43(a)(1)(B) of the Lanham Act, as amended, 15 U.S.C. § 1125(a)(1)(B).

158. Specifically, and as alleged above, Defendants have made the following false or misleading statements of fact in commercial advertising on the Jeeva Website:

- That Defendants' product is "Coming In December To" four identified retailers;
- That Defendants' product has received "4.7 stars from 5673+ reviews";
- That more than 17,000 daily users have joined Defendants' customer base;

- That Defendants tested the product in 2025 through a randomized, double blind, placebo-controlled clinical study with 120 participants, and the specific percentage results attributed to that study; and
- The purported customer testimonials attributed to named individuals, including claims of specific blood pressure reductions.

159. These statements are literally false or, at minimum, are likely to deceive a substantial segment of their intended audience.

160. The statements are material because they concern the efficacy, clinical support, market acceptance, and availability of Defendants' product, which are central to a consumer's decision to purchase a dietary supplement.

161. Defendants made the statements in interstate commerce through a website that solicits and accepts orders from consumers nationwide.

162. Plaintiff and Defendants are direct competitors selling liquid dietary supplement health shots to the same consumers through the same channels. Plaintiff has been and is likely to continue to be injured as a direct and proximate result of Defendants' false advertising, through diverted sales, lost customers, and harm to its reputation and goodwill.

163. Defendants' false and misleading advertising has caused and, unless enjoined, will continue to cause Plaintiff competitive injury, including diverted sales, lost customers, and injury to Plaintiff's reputation and goodwill.

164. Plaintiff's injuries flow directly from the deception caused by Defendants' advertising because Defendants use false representations concerning clinical validation, consumer adoption, reviews, testimonials, and retail availability to induce consumers in the parties' shared market to purchase Defendants' competing product.

165. Defendants' false advertising was and continues to be knowing and willful.

166. Defendants have derived sales and profits from the false and misleading advertising alleged herein, while Plaintiff has suffered corresponding competitive injury.

167. Plaintiff is entitled to damages, Defendants' profits to the extent authorized by law, injunctive relief, attorneys' fees where recoverable, costs, and such other relief as the Court deems appropriate.

**COUNT 8**

**California False Advertising Law**

**(Cal. Bus. & Prof. Code § 17500)**

168. Plaintiff incorporates and re-alleges each paragraph above into this claim as though fully set forth herein.

169. Defendants have made and disseminated, and continue to make and disseminate, statements concerning their products to the public in California and

throughout the United States, with the intent to induce members of the public to purchase those products.

170. Those statements, including Defendants' representations regarding imminent retail availability, review counts and star ratings, customer volume, clinical testing and clinical results, and customer testimonials, are untrue or misleading.

171. Defendants knew, or by the exercise of reasonable care should have known, that those statements were untrue or misleading. Upon information and belief, Defendants originated the statements themselves and are therefore aware that no clinical study, retail commitment, or corresponding customer base exists.

172. Defendants' conduct constitutes false advertising within the meaning of California Business and Professions Code section 17500.

173. Plaintiff has suffered injury in fact and has lost money and property as a result of Defendants' false advertising, including through diverted sales and customers who purchased Defendants' product in reliance on false claims of clinical validation and market acceptance.

174. Plaintiff is entitled to injunctive relief and restitution pursuant to California Business and Professions Code sections 17203 and 17535, and Defendants will continue their unlawful conduct unless enjoined.

///

///

**COUNT 9**

**California Unfair Competition Law**

(Cal. Bus. & Prof. Code § 17200)

175. Plaintiff incorporates and re-alleges each paragraph above into this claim as though fully set forth herein.

176. Without Plaintiff's consent, Defendants have been, and continue to engage in unlawful, unfair, or fraudulent business acts, including but not limited to by improper use of Plaintiff's copyrights and trade dress in connection with the sale, distribution, offering for sale, or advertising of services, and this use is likely to cause confusion or mistake or to deceive as to the affiliation or sponsorship of such services. These acts constitute unfair competition under California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

177. The unlawful business acts and practices alleged herein include Defendants' violations of the Copyright Act, 17 U.S.C. § 101 et seq., the Lanham Act, 15 U.S.C. § 1125(a), and California Business and Professions Code section 17500.

178. Defendants' business acts and practices are also unfair in that they offend established public policy and are substantially injurious to consumers and competitors. These practices include using confusingly similar trade dress and advertising materials to market competing products, publishing infringing content

under a new brand after receiving actual notice of Plaintiff's asserted rights, and making the false and misleading advertising representations alleged herein.

179. Defendants are making, and continue to make, various false and misleading representations tending to induce potential consumers to believe that, among other things, Defendants are affiliated, connected, sponsored, or associated with Plaintiff. Defendants' acts constitute unfair competition and unfair business acts and practices under California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

180. Defendants' acts are intentional, willful, and committed in bad faith with the intent to confuse and deceive the public.

181. As a direct and proximate result of Defendants' unfair competition, Plaintiff has sustained injury in fact to its business, profits, reputation, and goodwill.

182. Defendants have caused, and unless enjoined, will continue to cause, irreparable harm for which there is no adequate remedy at law.

## DEMAND FOR JURY TRIAL

183. Plaintiff incorporates and re-alleges each paragraph above into this claim.

184. Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award Plaintiff relief including

but not limited to the following:

1. A judgment declaring that Defendants have:
    a. Infringed Plaintiff's Dose Website Copyright; and
    b. Infringed Plaintiff's Dose Logo Copyright;
    c. Infringed Plaintiff's Dose Logo trademark; and
    d. Infringed Plaintiff's trade dress in its Dose Product Packaging and Dose Website.
2. A temporary, preliminary, and permanent injunction enjoining Defendants and (as to Root and Jeeva) its officers, directors, agents, retailers, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from:
    a. Using or infringing on Plaintiff's Dose Website Copyright;
    b. Using or infringing on Plaintiff's Dose Logo Copyright;
    c. Using any mark confusingly similar to Plaintiff's Dose Logo trademark in connection with the advertising, marketing, distribution, or sale of competing products;
    d. Using trade dress confusingly similar to Plaintiff's Dose Website trade dress;
    e. Using trade dress confusingly similar to Plaintiff's Dose Product Packaging.

3. An order directing Defendants to take down the Root Website and the Jeeva Website and, should Defendants wish to maintain any website, to engage in a comprehensive redesign that eliminates all infringing elements (of both the websites themselves and the Root and Jeeva bottles) and any substantially similar variation thereof, and prohibiting Defendants from republishing the infringing content under any other brand name;
4. An order directing Defendants to remove from any website, advertising, or marketing material the false and misleading representations alleged herein, including representations regarding retail availability, review counts and ratings, customer volume, clinical testing, clinical results, and customer testimonials;
5. An order directing Defendants to serve on Plaintiff, within thirty (30) days after service on Defendants of a preliminary or permanent injunctive order, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;
6. An award of all profits of Defendants derived from their infringing activities, plus all losses of Plaintiff caused by Defendants' infringement, the exact sum to be proven at trial;
7. An order directing Defendants to recall all infringing products from

distribution channels and destroy all infringing products in their possession or control;

8. An award of compensatory damages in an amount to be proven at trial;
9. At Plaintiff's election and to the extent authorized by law, an award of statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages of up to $150,000 per infringed work for willful infringement.
10. An award of restitution pursuant to California Business and Professions Code sections 17203 and 17535;
11. An award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 505, this being an exceptional case;
12. An award of pre-judgment interest to compensate Plaintiff for the delay in receiving damages, and post-judgment interest on all damages awarded;
13. An award of punitive damages to deter Defendants' willful and intentional infringements;
14. An award of all costs incurred in this action; and
15. Such other and further legal and equitable relief as this Court deems just and proper.

DATED: October 2, 2026

THE KEARNEY FIRM, APC

By: /s/ Emily Brandenburg

EMILY BRANDENBURG

(AKA EMILY KEARNEY)

Attorney for Plaintiff

EETHO BRANDS, INC.